Walter B. Hart, J.
Petitioner Carlson moves for an order invalidating the nominating petitions filed with the Board of Elections on behalf of John T. Norton, as candidate for State Senator of the 21st Senatorial District, Matthew J. Troy, Anthony P. Mennella and James F. Twohy, as Delegates to the Constitutional Convention from the 21st Senatorial District ; and Bichard V. Molen as Member of the Assembly, 50th Assembly District, Kings County, as candidates of the United Taxpayers party. The foregoing candidates, together with Hugh L. Carey, candidate for Congress, and Joseph A. Einaldi, candidate for the Assembly in the 49th Assembly District, move for an order validating the nominating petitions filed on their behalf as candidates of the United Taxpayers party. Petitioner Carlson also seeks to invalidate the petition filed on behalf of Carey for Congressman.
After taking testimony for two days, the parties stipulated as to the facts, leaving two questions of law to be decided by the court. It was agreed to accept the findings of the Board of Elections that in the 49th Assembly District (where Einaldi is the Assembly candidate) there were 966 valid signatures for the candidates for State Senator and Delegates to the Constitutional Convention; and in the 50th Assembly District (where Eichard V. Molen is the Assembly candidate) there were 2,151 valid signatures. Pursuant to section 138 (subd. 5, par. [c], cl. [4]) of the Election Law, there must be 3,000 valid signatures for any office to be filled by all the voters in any Congressional or Senatorial District. For the Assembly, 1,500 signatures are required (Election Law, § 138, subd. 5, par. [c], cl. [5]). The petitions for the candidates for Assembly were signed by the same numbers as those for the Senatorial and Constitutional Convention Delegate candidates. Clearly, therefore, the petition on behalf of Molen, 50th Assembly District, has sufficient signatures, and that on behalf of Einaldi, 49th Assembly District, is invalid. The only remaining issues, therefore, are with respect to the validity of the petitions filed on behalf of the candidates for Congress, State Senate, and Delegates to the Constitutional Convention, which are required to have 3,000 valid signatures.
*821 1. The first issue of law to be resolved as provided for in the stipulation is whether the petitions filed for the 49th and 50th Assembly Districts may be tacked together so that the 966 valid signatures in the 49th Assembly District may be added to the 2,151 signatures in the 50th Assembly District to arrive at a total in excess of the 3,000 signatures required in the Senatorial District to qualify the candidates for State Senator and Delegates to the Constitutional Convention. The Board of Elections ruled that this could not be done because the Committee on Vacancies on the sheets filed for the 49th Assembly District differed from that in the 50th Assembly District (except in the case of Hugh L. Carey, the candidate for Congress). In the 49th Assembly District, there was one Committee on Vacancies for these offices and a separate one for them and the candidate for the Assembly in the 50th Assembly District. It is the position of the objectors that the petition filed in the 49th Assembly District, being insufficient for the nomination of Assemblyman, was void for all purposes. The objectors rely primarily on the holding of the court in Di Lorenzo v. Heffernan (187 Misc. 766, affd. 271 App. Div. 802, affd. 296 N. Y. 687), which this court finds inapposite. In that case two different persons filed petitions for the same office — State Senator — in the same district, neither of which had sufficient valid signatures. Thereafter one of the candidates declined the nomination and his Committee on Vacancies attempted to designate the remaining contestant as the candidate for the Liberal party. The court, in holding that the attempted designation was ineffectual, stated (p. 767): “ The statute would seem to imply the existence of a valid independent nomination in which a vacancy has occurred as a prerequisite to any valid action on the part of the committee to fill vacancies.”
In the case at bar there is but a single candidate for each of the offices; there has been no declination or attempt by a Committee on Vacancies to act. A study of the authorities submitted by the parties fails to disclose an appellate court precedent on all fours with the facts here present, viz., identical candidates (with the exception of the Assembly), with different Committees on Vacancies, and where the candidates have not declined so as to create a vacancy. For this reason the holding in Matter of Garside (242 App. Div. 804, revd. in 265 N. Y. 606 [1934]), which is contra to the later holding in Di Lorenzo [1946], is inapplicable to the case at bar. In Qarside the Fusion party filed two nominating petitions for two individuals as candidates for Justices of the Municipal Court, neither of which had the requisite 3,000 valid signatures, but collectively they *822 did. Each had a different Committee on Vacancies, One of the candidates declined and his committee substitujted the remaining candidate. Special Term validated the petition, was reversed by the Appellate Division, which in turn was reversed by the Court of Appeals.
This court is constrained to validate the petition on the holding of the court in Matter of Polier (N. Y. L. J., Aug. 23, 1949, p. 309, col. 1 [N. Y. County, Greenberg, J.]), which appears to be factually apposite. While reference to the Law Journal discloses merely an oral decision, the facts and holding with respect thereto appear in Gassman, Election Law ([2d ed.], vol. 1, p. 504). In that case a candidate for City Council was designated on two sets of petitions, each of which, as here, had a different Committee on Vacancies. The court denied the motion to invalidate the petition, holding that the irregularity in having more than one Committee on Vacancies did not invalidate the petition.
The decisions in the Court of Appeals with respect to the necessity of having any committees on vacancies, or proper ones, are conflicting (cf. Matter of Brennan v. Power, N. Y. L. J., Sept. 7, 1954, p. 9, col. 8 [Stoddart, J.], affd. 284 App. Div. 847, affd. 307 N. Y. 818 [1954]; Matter of Richter v. Thaler, 15 A D 2d 803, affd. 11 N Y 2d 722 [1962]). However, in the most recent case of Santucci v. Power (21 A D 2d 698, affd. 14 N" Y 2d 764), a designating petition named a committee of three to fill vacancies. On a proceeding to invalidate the petition, it was conceded that one of the committee was not an enrolled member of the party. The Appellate Division reversed an order invalidating the petition and in turn was affirmed by the Court of Appeals. As stated by Gassman ([2d ed.], vol. 2, 1966-1967 Supp., p. 43), “ By inference, therefore, the court held that strict compliance with Section 135 was not absolutely necessary.”
It is the court’s conclusion that the petitions filed on behalf of the candidates (other than the Assemblyman) in the 49th and 50th Assembly Districts may be considered jointly as one petition and contain sufficient signatures as required by law (Matter of Grifo, N. Y. L. J., May 25, 1960, p. 15, col. 5 [Queens County, Rabin, J.]).
2. The second issue of law to be resolved by the court relates to the effect of the use by the signers of the petition of their 1966 election and Assembly districts rather than the 1965 election and Assembly districts in which they voted. This occurred with respect to all of the candidates including the candidate for Congress. In connection with this facet of the matter the court. *823 takes judicial notice that in 1964 the Assembly Districts of the State were reorganized under a legislative plan of reapportionment and the general elections in 1965 were conducted on that plan. In March, 1966 the Court of Appeals promulgated its own plan of apportionment for the legislative elections and the primary election in June, 1966 and the general election to be held in November, 1966 are to be held under that plan. Under each plan different Assembly and election districts were designated. The court further notes that in 1957 a system of permanent registration was adopted for the City of New York.
The parties to the instant proceeding entered into a written stipulation as follows:
‘‘ 1. That the geographical area covered by the offices involved in these proceedings, the 15th Congressional District, the 21st Senate District, the 49th Assembly District, and the 50th Assembly District, contains, in 1966, some 261 elections districts, of which three districts are not used.
‘ ‘ 2. That none of the 261 election districts has as its designation number (i.e., election district and assembly district), the same designation number for 1966 general election that it had in 1965.
“3. That as a result of the court reapportionment of 1966, the Board of Elections was required to do, at the very least, the following:
“ A. Reorganize all the registration poll records (buff cards) into new election districts and assembly districts;
“ B. Stamp every such “buff card” with the new election district and assembly district number;
“C. Refile all such “buff cards” under the new election district and assembly district designation numbers;
‘ ‘ 4. That in 63 instances the districts were so changed by the Assembly and Senate lines, that the 1965 cards were re-sorted in two, three, or four parts to be combined with other cards in other districts, and thereby represent so-called “ split districts ”.
‘ ‘ 5. That the registration of the affected 1966 districts, 261 in number, contained before the first day of local registration on October 4, 1966, some 163,623 registrants — for each of whom there is a registration poll record (buff card).
“ 6. Because the primary election, held on June 28, 1966, was held under the court reapportionment plan, all records were sorted and identified by their new 1966 election districts and assembly districts prior to such primary election and are now so sorted and identified.
“ It is further stipulated that there were available for use and purchase at the Board of Elections, during all of 1966, the *824 maps showing the 1965 general election, Election districts and Assembly districts.”
It is apparent from all of the foregoing that in a period of three years there were two different reapportionments of Assembly and election districts with resultant confusion for the voters and persons signing petitions. The objectors urge that this is no excuse for noncompliance with the statute, citing, inter alia, Matter of Lieblich v. Cohen (286 N. Y. 559 [Oct., 1941]). However, in the more recent case of Matter of Acito v. Power (17 A D 2d 710), the Appellate Division, First Department, held that the failure to designate correctly the election district is immaterial.
Another case cited by the objectors is Matter of Goldwater v. Simon (24 Misc 2d 430, affd. 11 A D 2d 1078, affd. 8 N Y 2d 1062). It is to be noted, however, that in this case (24 Misc 2d 432), the court pointed out that no excuse was offered for the noncompliance with the statute and that therefore the case was distinguishable from Matter of McManus v. DeSapio (13 Misc 2d 513, affd. 7 A D 2d 613, affd. 5 N Y 2d 773). In Matter of McManus v. DeSapio (supra) independent nominating petitions were filed on September 9, 1958 for State offices requiring at least 50 valid signatures in each county. Among other matters the court was required to determine the validity of the petition subscribed by a witness who recited therein that she resided in the 55th Election District of the 4th Assembly District when in fact she resided in the 52nd Election District. It was conceded that the 55th Election District was correct for 1956 but not for 1957 which change became effective October 1, 1957. She did, however, vote in 1957 from the 52nd Election District. The court followed the determination made in Matter of Sussman v. Power (Special Term, Kings County, affd. 6 A D 2d 997, affd. 5 N Y 2d 752) which held that the confusion resulting from the change in election districts made on October 1, 1957 did not affect the validity of the petition which showed the 1956 election district as the election district of her residence. In resolving this issue, the court in Matter of McManus v. DeSapio (13 Misc 2d 513, 520), stated as follows: “ This court, therefore, concludes that the failure of the subscribing witness, Sharon Finer, to designate the proper election district was not fatal to the signators who had signed such petitions and that the whereabouts of the subscribing witness was easily ascertainable as she had not changed her address and inquiry at the Board of Elections would have disclosed the change in her election district number. The purpose of this requirement in the law is that the subscribing witness may be readily identified and *825 located. The error did not in any way prejudice the rights of any of the parties to the proceeding.” (See, also, Matter of Kunzeman v. Power, 24 A D 2d 718, affd. 16 N Y 2d 847.)
This court finds that, in view of the present system of permanent registration, the purpose of requiring that signers of the petition state their correct election and Assembly districts as of the time of the last election (Election Law, § 138) is that the Board of Elections could readily identify and verify the signers of petitions. This purpose was not frustrated, in view of the efficient and effective manner in which the Board of Elections acted to relocate the permanent registration cards as each reapportionment took place. Therefore, in view of the attendant confusion on the part of the public because of the multiple reapportionments, the Board of Elections was warranted in determining that the use of the 1966 Assembly and election districts rather than those of 1965 did not render the petitions invalid. Moreover, the “ error ” did not in any way prejudice the rights of any party to this proceeding.
An order may be entered affirming the invalidation of the petition on behalf of Rinaldi for Assembly in the 49th District and validating the remaining petitions.